UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

MARK ULIANO,                    )
            Plaintiff           )
                                )
v.                              )   CIVIL ACTION NO. 04 10797 GAO
                                )
MARIE H. BISSEL and             )
KENNETH J. TILDEN,              )
            Defendants          )

## DEFENDANT, KENNETH J. TILDEN'S SUPPLEMENTAL INITIAL DISCLOSURES PURSUANT TO FED.R.CIV.P., 26(a)(1) AND LOCAL RULE 26.2

Please find attached the complete statement of Plaintiff, Mark Uliano, dated April 24, 2003, attached hereto as Exhibit "A". Portions of the same were missing from this defendant's Initial Disclosure.

The Defendant/Plaintiff in Cross-Claim,
KENNETH J. TILDEN,

By his attorneys,

AVERY DOOLEY POST & AVERY, LLP

Joseph M. Noone – BBO#559644
James T. Sullivan – BBO#565700
90 Concord Avenue
Belmont, MA  02478
(617) 489-5300

Dated:  October 7, 2004

## CERTIFICATE OF SERVICE

We, Joseph M. Noone and James T. Sullivan, hereby certify that we have this 7th day of October, 2004, forwarded the within document to all counsel of record by delivering same first class mail, postage prepaid to:

David M. Cohen, Esquire
Stephen J. Delamere, Esquire
BIERHANS, DELAMERE & COHEN, LLC
294 Pleasant Street, Suite 204
Stoughton, MA  02072

James C. Crowley, Jr., Esquire
FULLER, ROSENBERG, PALMER & BELIVEAU, LLP
340 Main Street
Worcester, MA  01608

Joseph M. Noone, Esquire (BBO#559644)
James T. Sullivan, Esquire (BBO#565700)
AVERY DOOLEY POST & AVERY, LLP
90 Concord Avenue
Belmont, MA  02478
(617) 489-5300

This is Richard O'Brien interviewing Mark Uliano uh, in person on April 24th, 2003, concerning an accident, which occurred on September 10th, 2002 in Canton, Massachusetts.

Q. Uh, would you please state your full name?
A. Mark Thomas Uliano.

Q. Is this recording being made with your full knowledge and consent?
A. Yes, it is.

Q. Spell your last name and give your present address.
A. U-L-I-A-N-O.

Q. And your present address.
A. 2 Glenwood Circle, Wareham, Massachusetts.

Q. Okay. And uh, your age.
A. Forty years old.

Q. And your occupation.
A. Self-employed um, renovation construction.

Q. Okay. And uh, your uh, date of birth.
A. June 18th, 1962.

Q. Okay. Social Security.
A. 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.

Q. Now on or about uh, September 10th of 2002, were you involved in an automobile accident?
A. Yes, I was.

Q. Tell what time the accident happened.
A. Uh, approximately 5:00, 5:15 at night.

Q. Okay. Where did the accident occur?
A. On Randolph Street in Canton, Mass.

Q. Okay. And what kind of vehicle were you driving?
A. I was driving my personal vehicle, which is a uh, Jeep Cherokee.



EXHIBIT
A

Statement of: Mark Uliano
Claim: 59-Y200-839
Page 1

Q. You the registered owner.
A. Yes, I am.

Q. Was there anybody else in the vehicle with you?
A. No, there wasn't.

Q. Okay. Uh, which um...how was...which street uh, were you on, when the accident happened?
A. I was on Randolph Street heading north.

Q. Okay. Were there any traffic controls involved in the accident, like stop signs or red lights or anything?
A. No, I was in a traffic line uh, there was a light at the top of the hill...it was traffic in front of me, which was stopped...

Q. Okay.
A. ...and I had stopped also.

Q. All right. Uh, how was the weather at the time?
A. Clear...beautiful.

Q. Was there anything to obstruct your view of traffic traveling in the opposite direction?
A. None.

Q. Okay. Um, what happened then, as you were waiting in line?
A. Um, basically I was stopped. Um, there was a street coming out on the other side...

Q. (Inaudible-talking simultaneously).
A. From my left-hand side...

Q. Okay.
A. ...I'm heading north...side street and a gentleman pulls up and wanted to come out heading north also onto Randolph Street.

Q. Okay.

A. So I stopped basically...w...in traffic because the traffic wasn't going anywhere...left him a large enough space so he could pull out. Uh, waited a few seconds, the gentleman started to pull out and stopped, sort of quarter way in. I...I would imagine only because he couldn't just pull right out into the traffic and go. He was just gonna come out and stop in the traffic. Um, few seconds went by, I noticed a car coming south on Randolph Street...got kinda closer, I realized that the person was sort of bending down in the front seat. I looked back over...the uh, gentleman was...that was coming out of the side street was still s...sitting sort of in the middle of the street. So I beeped my horn to let somebody know that there was gonna be an accident and all of a sudden, the woman looked up and the guy pulled out at the same time. I think he just sorta panicked. So it was sorta split action.

Q. Okay. So uh, he...h...he was stopped about approximately quarter out onto uh, Randolph Street.

A. Right.

Q. Okay. Then, as he saw this vehicle approaching he tried to pull forward...

A. He never saw the car.

Q. He never saw the car.

A. He wasn't...I was...you know, okay...you come out...he sorta stopped and moved (Inaudible) okay, fine because there was no traffic coming down on the other side...

Q. Um-hum.

A. So we, you know, a few seconds went by and I...okay, nows a car coming...okay pal, what are doing...you not even paying attention. She's not paying attention, your not paying attention...beep and he just sorta like looked up and pulled right out, didn't even look.

Q. Okay. After you beeped the horn.

A. Yeah.

Q. Okay.

A. Because eith...either way there was going to be an accident.

Q. Okay. She uh...she wasn't looking either.

A. She wasn't paying attention either and he wasn't paying attention either (Inaudible).

Q. Okay. Did she ever hit the brakes?

A. Um, I don't think so...to be honest with ya. Uh, I know she swerved.

Q. To her...which way?

A. Um...

Q.   To her left.

A.   ...she was coming down, she swerved like he was coming out.  So she swerved to avoid him...

Q.   Okay.

A.   ...ended up hitting him and then came into me.

Q.   All right.  H...w...as she was approaching, was she traveling...h...I'm not gonna ask you how fast she was going...but she w...was she traveling as traffic normally travels on that road or faster?

A.   Um, I...I thought she was traveling a little bit fast.

Q.   Okay.  All right.  Uh, was there anyone else in the car with her?

A.   Um, with her there was a...I found out that there was a dog because after she hit me, I was able to get out and help her because he car started to roll back down into the...and she had the dog in her front seat and then I realized (Inaudible) doing something with your dog.

Q.   W...where did the impact take place...was it on uh, your si...on the northbound lane of Randolph...

A.   (Inaudible-talking simultaneously).

Q.   ...was it that far over?

A.   They hit m...I got hit on my side of the lane.

Q.   Okay.

A.   'Cause I was stopped...

Q.   Okay.

A.   ...just sittin' there.  And you know, sort of watching this whole scenario go down in a matter of seconds.  And unfortunately, I braced up and she gonna hit me...I'm watching the whole thing and my feel...let's just say this was the front grill of my car, she..

A.   (Unidentified male)  Well just...I'm tryin' to stop ya.  Keep...you're...your talking on a tape recorder right now...

Q.   Yeah, you're using...

A.   (Unidentified male)  ...and your using your hands (Inaudible) and they can't see that on (Inaudible).

A.   Right, okay.

A.   (Unidentified male)  So just please be descriptive in what you say.

A.   Okay.  Um, basically I was standing still...

Q. Okay.
A. ...the car coming out of the side street came right out in front of her. She sorta swerved...tried to swerve to get out of his way...hit him and then came into my lane and hit me.

Q. Okay. She...all right, so where did the impact take place...the initial impact, you know, where they...had they crossed the centerline?
A. (Inaudible-talking simultaneously) me, sir.

Q. No, no...from the other two cars before they hit ya?
A. Yeah, the two cars, I would say, was probably more the...right in the middle of his lane to three-quarters of the way into his lane.

Q. Okay. And then she bounced off of him and hit you.
A. Yes.

Q. And uh, roughly hit her.
A. Yes.

Q. Okay. All right. Did the uh, police investigate the accident?
A. Uh, they showed up, yes.

Q. Do you know if they issued any citations?
A. Um...uh, I don't know that.

Q. Okay. D...if you don't know that's fine. Was there any use of drugs or alcohol (Inaudible) that you're aware?
A. (Inaudible-talking simultaneously).

Q. Is there anything sir, you'd like to add regarding the facts of the accident that we didn't cover?
A. Um, messed me up pretty much...my uh...
A. (Unidentified male) Uh, (Inaudible-talking simultaneously) just talking about the accident (Inaudible-talking simultaneously).

Q. (Inaudible-talking simultaneously) We were just...just the facts of the accident.
A. (Unidentified male) (Inaudible-talking simultaneously).
A. Okay. No that's basically...basically how I remember it.

Q. Okay. All right. Are the remarks made in this recording the truth to the best of your knowledge?
A. Absolutely.

Statement of: Mark Uliano
Claim: 59-Y200-839
Page 5

Q. Has this recording made with your full knowledge and consent?
A. Yes, it was.


Q. If you were called to testify under oath, would your testimony be substantially the same as you have recorded?
A. Absolutely.


Q. Thank you.  This concludes the recorded interview.


ULIAM