UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| MARK ULIANO,<br>    Plaintiff<br><br>vs.<br><br>MARIE H. BISSELL and<br>KENNETH J. TILDEN,<br>    Defendants | C.A. NO. 04 10797-GA0 |

**AFFIDAVIT OF ATTORNEY BRUCE A. BIERHANS IN SUPPORT OF NOTICE OF ATTORNEY'S LIEN**

I, Bruce A. Bierhans, under oath, herby depose and say the following:

1. I am an attorney licensed to practice law in the Commonwealth of Massachusetts and have been so licensed since 1982.

2. Over the course of my twenty three year career, I have been a member of the Board of Governors of the Massachusetts Academy of Trial Attorneys (MATA), the head of the American Trial Lawyers (ATLA) Committee on Computer Vendor Liability, a Pretrial Mediator in the Norfolk County Superior Court for eight (8) years, and have extensive experience litigating complex tort and business cases. I have also litigated and tried cases involving disciplinary matters on both referral and request from the Office of Bar Counsel.

1

3. At all times relevant hereto, I was the sole managing partner/member of Bierhans, Delamere & Cohen, LLC, (the "Firm") the law firm that had a filed Appearance in the within case on behalf of the plaintiff. The LLC continues in existence. However, as of January 1, 2006, the name of the LLC has been changed to the Law Offices of Bruce A. Bierhans, LLC.

4. At no time relevant hereto, did any law firm, other than Bierhans, Delamere & Cohen, LLC have a filed Appearance in this case as counsel for the plaintiff.

**GENERAL BACKGROUND**

5. In March 2005, Attorney Cohen, who is also a Stoughton Police Officer, was indicted on ten (10) felony charges. These charges allegedly arise out of Cohen's activities as a police officer. On information and belief, those charges include two counts of false arrest, filing a false police report, assault and battery, intimidating a witness and single counts of conflict of interest and attempted extortion. The indictments are relevant only insofar as they relate to the discussion below relating to Joda Enterprises, Inc. and the reason for Cohen's termination as a partner in the firm.

6. Since Delamere's employment with the firm in 1997, Delamere had been paid with a combination of salary and discretionary bonuses, in accordance with the firms Operating Agreement. Since Cohen's employment with the

2

firm since 1999, his compensation arrangement has been the same until his termination as a partner, as described further below. For all fees originated by Cohen, he received fifty percent (50%) of the gross fees in cases which he was the "originating attorney." The firm was fully responsible for supporting Cohen's practice, including the hiring of his staff and payment of <u>all</u> case expenses. In other words, while Cohen received fifty percent (50%) of gross fees, the firm received fifty percent (50%) of gross fees, <u>less</u> case and practice related expenses. In effect, Cohen received the benefit of his production, while not being subject to any practice related risks.

7. Throughout calendar year 2005, both Cohen and Delamere engaged in outside business activities which I felt were cause for concern. Included among those activities, were the formation of businesses which were not disclosed to me as sole managing partner of the firm. Those businesses include a "law related services" business formed by Delamere, known as The Delamere Flynn Group (a real estate brokerage firm)[1] and a corporation formed by Cohen, with his wife, Melissa, as a co-owner/shareholder, known as Joda Enterprises, Inc. On information and belief, the purpose of the formation of Joda Enterprises, Inc. was to purchase gas/service stations and convenience stores.[2]

---

1 The business has an active website with a URL of www.delflynn.com

2 Cohen's wife also acquired interests in other businesses, such as an insurance company known as J. Arico Insurance Agency.

3

8.  It was not until midyear 2005 when the firm was preparing its' legal malpractice application, that Cohen and Delamere were confronted by me regarding the formation of these enterprises, disclosure of which had not been previously made.  Although these activities caused some strain in our relationship, the firm continued to conduct business in the normal course.

9.  In early December 2005, while I was preparing for a Class Certification Hearing in Barnstable Superior Court, I became suspicious of some "closed door activity" involving both Delamere and Cohen.

10.  Upon a search of the firm's database, an Opinion Letter, authored by Delamere, dated December 1, 2005, was discovered.  A copy of one of two Opinion Letters authored by Delamere is attached hereto as Exhibit "A".

11.  Apparently, Joda Enterprises, in which Cohen's wife was a co-owner/shareholder, was purchasing two gas stations; one in Brockton, MA and one in Wareham, MA.  The Opinion Letter also contained the standard "No pending litigation" clause.

12. To my knowledge, at no time during his employment with the firm had Delamere ever been involved in a sophisticated commercial transaction, nor I believe had he ever authored an Opinion Letter.  Further, Delamere had no authorization to execute such a letter, and subject the firm to the exposure associated with Opinion Letters.  I, on the other hand, have had extensive experience in such matters.

4

13.  In effect, Delamere authored two unauthorized Opinion Letters, in an aggregate total of approximately Two Million dollars ($2,000,000.00) on federally guaranteed SBA loans, on behalf of a corporation in which his partner's wife was a shareholder, at a time when his partner faced a ten (10) count felony indictment.  Neither Delamere nor Cohen ever disclosed their activity to Bierhans, until the letters were discovered.  Delamere then acknowledged authoring the letters.

14.  As a result of my demand that the Opinion Letters be immediately withdrawn, and that new Opinion Letters be obtained from new counsel, it was learned that not only was Cohen's wife Melissa a shareholder and guarantor, but that Cohen himself, Delamere's own partner, was also "personal guarantor" of the loans.  Therefore, not only did Delamere execute Opinion letters on behalf of Cohen's wife, but also executed the Opinion Letters on behalf of his own partner as a personal guarantor.

15.  Further, after I requested the prompt return of the original Opinion Letters, in a telephone conversation with lenders counsel, Christopher P. Rhodes, I was informed that Delamere's original letters no longer existed and had, in fact, been "shredded" by Rhodes.  Confirmatory correspondence in this regard is attached hereto as Exhibit "B".

16.  Upon learning of the Opinion Letter and shredding incident, I immediately revoked the partnership authority of Delamere and Cohen. Copies of confirmatory emails dated

5

December 16 and December 19, 2005, in this regard are attached hereto collectively as Exhibit "C".

17. Upon the aforementioned termination of the partnership authority, and after Delamere and Cohen indicated that they were leaving the firm, it was agreed that an orderly transition would occur in full accordance with applicable law firm transition related case law and the Massachusetts Rules of Professional Conduct, and that said transition would run through March 1, 2006. A copy of one sample client letter in that regard is attached as Exhibit "D". At that time, I retained Jeffrey Stern of Sugarman, Rogers, Barshak & Cohen, as counsel for the firm. Attorney Stern is imminently qualified in law firm transition and disciplinary matters.

### THE ULIANO CASE

18. At this time in late December and early January, it was understood that Delamere and Cohen would continue to work out of the firms' offices and handle matters responsibly as part of the firm

19. The Uliano case, a case originated by Cohen, was filed in this Court on April 20, 2004, and was arbitrated by Attorney Delamere on December 22, 2005, before Brian Jerome, Esq. Other than waiting for the result and disbursing the funds, the case was concluded in 2005.

20. In conversations and emails with Attorney Delamere in late December and early January, I indicated that Uliano

6

was a 2005 case and as Attorney Cohen was the originating attorney, it would be disbursed in accordance with our agreement of the last six years.  Additionally, the firm had unreimbursed "out of pocket expenses" in the amount of Three Thousand two hundred and eighty one dollars ($3,281.00).

21.  On or about January 10, 2006, I was advised by Delamere and Cohen that they had retained counsel, David Dwork of Barron and Stadfeld.

22.  Unfortunately, once Delamere and Cohen retained counsel, actions on their part created suspicion that they had formed a new law firm known as Delamere & Cohen, LLC and were actually operating said law firm out of the offices of Bierhans, Delamere & Cohen, LLC.

23.  As only two examples of many documents discovered, attached as Exhibit "E", is correspondence in the name of Delamere & Cohen, LLC, containing a new P.O. Box and new telephone numbers and other correspondence containing the name Delamere & Cohen, LLC with the firms' present address and new telephone numbers.  Both the letters in the aforementioned Exhibit clearly reflect efforts on the part of Delamere and Cohen to actually divert settlement proceeds from cases still located at the firm, and while they were still physically at the firm and using firm resources.[3]

---

[3] At the present time, I am aware of at least seven (7) cases, other than Uliano, in which such attempts have been made.

24. Apparently, on January 7, 2006, the arbitrator in Uliano rendered his decision which was addressed to Attorney Delamere, and is attached hereto as Exhibit "F". I was never informed by Attorney Delamere of the award or its amount, and did not receive a copy of the award, until I received it from Attorney Stern, on February 15, 2006.

25. Just before the filing of my firms' lien on February 6, 2006, I did, in fact, discover documents on the firms' database in the Uliano case, including a letter to the client, a Stipulation of Dismissal and a letter to defense counsel dated January 19, 2006, containing the Stipulation of Dismissal. Copies of these documents are attached hereto as Exhibit "G". From the unsigned documents, it appears that Delamere executed the Stipulation of Dismissal in the name of Bierhans, Delamere & Cohen, LLC. Curiously, the firm's database contained no other letters, such as a disbursement letter to the client, or letters of instruction to defense counsel, Attorney Crowley or Attorney Sullivan, relating to the payee of the settlement check.

26. At the time of the filing of my lien, I also contacted Attorney Crowley and inquired as to whether or not the check had been cut and if so, to whom it was made payable and where it had been sent. He told me he was "uncomfortable" speaking with me and would not comment further. I have not heard from him since that time.

27. On February 16, 2006, I received a telephone call from Attorney Sullivan's paralegal. She indicated to me that

Attorney Delamere had, in fact, forwarded correspondence asking that the settlement proceeds be forwarded to him at another address. I requested, but have not received a copy of Attorney Delamere's letter.

28. Based upon the available evidence as referenced herein, it appears that:
    a. An award was made in the amount of $75,000.00;
    b. Attorney Delamere did, in fact, file the Stipulation of Dismissal in the name of the Bierhans, Delamere & Cohen, LLC;
    c. If issued, the settlement check or checks were sent to, or were requested by Delamere & Cohen, LLC to be sent to made out to a law firm that was *not* the firm with the filed Appearance;
    d. I am aware of no escrow of the settlement funds;
    e. To date, there has been no payment to the firm for fees or out of pocket expenses on the case.

28. On February 14, 2006, I received a telephone call from a woman named Amy representing South Shore Regional MRI. She indicated that SSRMRI was owed One Thousand one hundred dollars ($1,100.00) pursuant to a compromise Agreement with Attorney Delamere. She asked if the case had been settled as she had not yet been paid.

29. Absent explanation, it appears that Attorneys Delamere and Cohen, while still working at the firm, have

9

intentionally diverted, or attempted to divert, substantial settlement proceeds, including the Uliano proceeds, from the firm.

Signed under the penalties of perjury this 24 of February 2006.

　　　　　　　　　　　　　　　　　　　　　Bruce A. Bierhans, Esq.

10